IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02809-MSK-CBS

DICK SUMMERS, on behalf of himself and all others
similarly situated,
      Plaintiff,
v.

FARMERS INSURANCE EXCHANGE, a
California insurance exchange,
      Defendant.

---

## RECOMMENDATION ON DEFENDANT FARMERS' MOTION TO DISMISS

---

Magistrate Judge Shaffer

      THIS MATTER comes before the court on Defendant Farmers Insurance Exchange's

("Farmers") Motion to Dismiss and Memorandum in Support, along with attached exhibits (doc.

#34), filed on March 26, 2012.  Plaintiff Summers filed his Response to Farmers' Motion to

Dismiss (doc. #40) on April 23, 2012.  Defendant's Reply in Support of Its Motion to Dismiss

(doc. #44), along with an additional exhibit, was filed on May 10, 2012.  Pursuant to the Order of

Reference dated November 1, 2011 (doc. #5) and a separate memorandum dated April 26, 2012,

the instant motion was referred to the Magistrate Judge.  I heard oral argument on Defendant's

Motion to Dismiss on May 31, 2012.  The court has reviewed the parties' briefs and exhibits, the

pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises.

For the following reasons, I am recommending that Defendant's Motion be granted.

1

## PROCEDURAL BACKGROUND

Dick Summers suffered personal injuries on December 16, 2009 while riding on a

Greyhound bus.  *See* Amended Class Action Complaint, at ¶¶16 and 17.  At the time of this

accident, Mr. Summers was the named insured on three automobile insurance policies issued by

Defendant Farmers.  *Id.* at ¶ 14.  Each of those policies provide coverage for a different specified

vehicle and include medical expense (hereinafter "MedPay") coverage in the amount of $5,000,

for which a separate premium has been charged.

The insurance policies purchased by Mr. Summers and at issue in this case include the

following endorsement providing MedPay coverage:

> **Part III – MEDICAL**
>  **Coverage E – Medical Expense Coverage**
>
> We will pay reasonable and customary expense for necessary
> medical services furnished within two years from the date of the
> accident because of bodily injury sustained by an injured person.
>
> \* \* \*
>
> **Additional Definitions Used In This Part Only**
>
> As used in this part, "insured person" or "insured persons" means:
>
> 1.  You or any family member while occupying or through being
> struck by, a motor vehicle or trailer, designed for use on public
> roads.
>
> 2.  Any other person while occupying your insured car while the
> car is being used by you, a family member or another person if that
> person has sufficient reason to believe that the use is with
> permission of the owner.
>
> \* \* \*

**Exclusions**

This coverage does not apply for bodily injury to any person:

* * *

4.  Sustained while occupying or, when struck by, any vehicle (other than your insured car) which is owned by or furnished or available for the regular use of your or any family member.

*See* Exhibit A (doc. #21-1) at pages 11-12 of 15, attached to Plaintiff's Amended Class Action Complaint.

The foregoing policy provisions explicitly create two distinct classes of potential MedPay beneficiaries.  The designated insured and their family members are entitled to MedPay benefits for injuries sustained while they are occupying or through being struck by "*any motor vehicle . . .* designed for use on public roads," unless the vehicle in question falls within a policy exclusion (*e.g.*, a vehicle owned by the insured or furnished or available for the regular use of the insured or any family member but not covered under the subject policy).  By its very terms, the Farmers policy excludes MedPay benefits for any injuries incurred while occupying or riding a household vehicle not insured by Farmers.  In this case, it is undisputed that Mr. Summers was entitled to MedPay coverage because the Greyhound bus he was riding on December 16, 2009 was a "motor vehicle designed for use on public roads" not subject to the exclusion for an uninsured household vehicle.  As a second class of beneficiaries, the Farmers policies purchased by Mr. Summers provide MedPay benefits to non-family members ("any other person") only if they were riding in an insured household vehicle, *and* if the non-family member sustained their injuries while that specific vehicle was being used by the insured, a family member of the insured, or another person that had sufficient reason to believe their use of the specified vehicle was authorized by the

insured.

Mr. Summers concedes that Farmers paid medical expenses for Part III Medical Pay coverage up to a total of $5,000.  Yet, Farmers declined to pay additional amounts, notwithstanding the fact that Plaintiff had three policies in force that provided MedPay coverage and that Mr. Summers had incurred more than $15,00 in medical expenses as a result of the December 16, 2009 accident.  *Id.* at ¶¶20 and 21.

Plaintiff initiated this action on or about September 28, 2011 by filing his original Complaint (doc. #2) in the District Court for Boulder County, Colorado.  That Complaint alleged claims against Farmers Insurance Exchange for breach of contract and declaratory relief, and also sought certification as a class action pursuant to Rule 23 of the Colorado Rules of Civil Procedure.  The action was removed to this court (doc. #1) on October 27, 2011.  Mr. Summers filed an Amended Class Action Complaint and attached exhibits (doc. #21) on February 8, 2012, which remains the operative pleadings in this case.  Plaintiff contends that this instant lawsuit raises two fundamental issues:

> (1) whether Farmers sufficiently disclosed to plaintiff (and the class) that he only needed to purchase MedPay coverage on one of his vehicles to provide coverage to named insureds, spouses and resident relatives while occupying any vehicle and (2) whether Farmers improperly refused to stack the MedPay coverage limits on plaintiff's (and the class') policies after requiring plaintiff to purchase MedPay coverage on multiple vehicles to provide such coverage to named insureds, spouses and resident relatives.

*See* Plaintiff's Response to Farmers' Motion to Dismiss, at 3.  The Amended Class Action Complaint asserts claims for relief on behalf of the named plaintiff and a putative class consisting of "all Farmers insureds in Colorado who paid a premium for medical payment coverage for more than one vehicle during the same policy period from July 1, 2004 to the

present, excluding Farmers employees, officers, directors and agents." *Id.* at ¶68.

The First Claim, for false and negligent misrepresentation, avers that "Farmers was aware of the personal nature of MedPay coverage" and that "[t]he documents regarding MedPay coverage that Farmers provided to Summers and members of the class were false and/or misleading due to Farmers' failure to disclose to its purchasers that purchasing MedPay insurance on one vehicle made it unnecessary to purchase Medpay coverage on a subsequent vehicle for those two classes of insureds," *id.* at ¶¶35 and 37, and that "Farmers has also breached its duty to inform its insured in a manner reasonably calculated to permit their insureds to make an informed decision on whether to purchase the MedPay coverage for subsequent vehicles." *Id.* at ¶39.  Plaintiff contends that his "disclosure claims focus on the information provided, or information which was not disclosed, which would impact plaintiff making an informed purchasing decision."  *See* Plaintiff's Response to Farmers' Motion to Dismiss, at 11, n.1.

Plaintiff's Second Claim asserts that Farmers breached the covenant of good faith and fair dealing that applies to all insurance contracts by accepting premiums for MedPay coverage on more than one vehicle while misadvising or failing to disclose that such coverage would not provide any additional coverage to the insured or resident relatives for injuries as a result of the use or operation of subsequent vehicles.  *Id.* at ¶44.

The Third Claim alleges that Farmer engaged in an unfair and deceptive trade practice in violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-105(u), by failing to disclose material facts to Mr. Summers and other members of the putative class.  More specifically, the Third Claim states that "Farmers failed to inform . . . Summers and the class members of the fact

that the purchase of MedPay coverage for one vehicle resulted in MedPay coverage for the named insureds and resident relatives using other vehicles including their own, and that purchasing Medpay coverage on more than one vehicle was not necessary to provide MedPay coverage for injuries to the named insureds and resident relatives as a result of the use and operation of a subsequent vehicle." *Id.* at ¶49.

The Fourth Claim seeks a declaratory judgment as to the rights of Farmers' policy holders. Plaintiff's Fifth Claim asserts breach of contract and a violation of the doctrine of reasonable expectations to the extent that Defendant improperly restricts its policy holders to the limit of $5,000 available under a single policy and thereby prevents an insured from combining or "stacking" the benefits available under multiple MedPay coverages.[1]

## ANALYSIS

Defendant Farmers has moved to dismiss Plaintiff's Amended Class Action Complaint and putative class action pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Summers has failed to state a viable claim for relief. More specifically, Farmers contends that Plaintiff's first four claims are based on the erroneous argument that MedPay coverage on one household vehicle also extends MedPay coverage on all other household vehicles owned by the insured. Defendant further argues that Mr. Summer's fifth claim should be dismissed as the anti-stacking provisions in his policies are not contrary to public policy. Not surprisingly, Plaintiff vigorously disputes those positions. As counsel explained during the hearing on May 31, 2012, Plaintiff's "theory . .

---

[1]During the hearing on May 31, 2012, plaintiff's counsel agreed to "concede" Plaintiff's Sixth Claim for breach of contract and its "notice" challenge to the anti-stacking provisions of his MedPay coverage. *See* Transcript of May 31, 2012 Hearing, at 24. Accordingly, this court sees no need to address the merits of that claim.

. is that there was coverage that didn't need to be purchased in certain instances, and that there was a lack of adequate disclosure of how this coverage worked." *See* Transcript of May 31, 2012, at 26.

In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 2010 WL 437335, at *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

---

[2]It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

complaint alone is legally sufficient to state a claim for which relief may be granted. In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. However, the Court need not accept conclusory allegations.

Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief. Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. 2009) (internal quotation marks and citations omitted).

A.    *Plaintiff's Fraud/Negligence Based Claims*

To the extent that Mr. Summers' First Claim alleges fraudulent or negligent misrepresentations on the part of Farmers, he must allege, *inter alia*, that "the defendant misrepresented a material fact." *See, e.g., Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (setting out the elements of a claim of negligent misrepresentation); *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003) (setting out the elements of a claim for fraudulent representation). It is also necessary to demonstrate that Mr. Summers relied on the Defendant's misrepresentation and that his reliance was justified under the circumstances. *See, e.g.,Loveland Essential Group, LLC v. Grommon Farms, Inc.*,251 P.3d 1109, 1116 (Colo. App. 2010). The common law tort of deceit by non-disclosure has as essential elements, the "concealment of a material existing fact that in equity and good conscience should be disclosed" and "knowledge of the party against whom the claim is asserted that such a fact is being concealed." *See, e.g., Carlson v. Garrison*, 689 P.2d 735, 736 (Colo. App. 1984).

8

To proceed with his Third Claim under the Colorado Consumer Protection Act, Mr. Summers must allege facts to show, *inter alia*, that Farmers engaged in a "deceptive trade practice" which could include "knowingly mak[ing] a false representation as to the . . . benefits . . .of services" or "mak[ing] false or misleading statements of fact concerning the price of goods [or] services." *See* C.R.S. § 6-1-1-5(1)(e) and (l). However, a claim under the Colorado Consumer Protection Act "will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice. The CCPA 'provides an absolute defense' to a misrepresentation caused by negligence or an honest mistake." *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) (internal citations omitted).[3]

As the Amended Class Action Complaint does not describe any communications between Mr. Summers or a Farmers representative leading up to or contemporaneous with the purchase of the subject motor vehicle insurance policies, the only "representations" that could be at issue in this case are the insurance policies themselves.[4] A fair and objective review of those policies reveals nothing in the pertinent provisions that could be characterized as ambiguous or contradictory. Nor does the Amended Class Action Complaint allege any material misrepresentation of fact as to the actual coverage provided by these policies. Indeed, the

---

[3]The Colorado Pattern Jury Instructions also make clear that for a claim under the Colorado Consumer Protection Act, "[a] 'misrepresentation' or 'false representation' is a false statement that (induces the person to whom it is made to act or to refrain from acting) (has the capacity or tendency to attract consumers) [or] (has the capacity to deceive the recipient even if it did not)." *See* CJI-Civ. 29:3 (2012).

[4]Even if such communications had been alleged in the Amended Class Action Complaint, Mr. Summers' policies include an integration clause that clearly states "this policy with the Declarations includes all agreements between you and us relating to this insurance." *See* Exhibit A (doc. #21-1), at page 15 of 15, attached to the Amended Class Action Complaint.

9

coverages and exclusions are plainly set out for the insured.  *Cf. Farmers Insurance Exchange v. Anderson*, 260 P.3d 68, 72 (Colo. 2010) ("As with any contract, we construe an insurance policy to give effect to the intent of the parties.  Whenever possible, this intent should be ascertained from the plain language of the policy alone."); *Allstate Insurance Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990) ("In construing [an insurance] policy, words should be given their plain meaning according to common usage . . . and strained constructions should be avoided.") (internal citations omitted).

It cannot be fairly disputed that purchasing MedPay coverage for each of Plaintiff's vehicles was unnecessary as a practical matter under the specific facts of this case, given that Mr. Summers was injured while riding a vehicle he did not own (*i.e.*, a Greyhound bus).[5]  It is equally true, however, that purchasing MedPay coverage for each of his vehicles provided benefits that otherwise would be unavailable to Mr. Summers, his family members, and third persons (*e.g.,* close personal friends) in the event they were injured while "occupying or, when struck by, any [uninsured] vehicle . . . which is owned by or furnished or available for the regular use of [Mr. Summers] or any family member."  Under the circumstances, I find as a matter of law that the Amended Class Action Complaint fails to allege a misrepresentation or the concealment of a material fact as to the specific coverages and exclusions set forth in the insurance policies themselves.  *Cf. Mullen v. Allstate Insurance Co.*, 232 P.3d 168, 174 (Colo. App. 2009).

Similarly, Plaintiff's Second Claim for bad faith breach of contract requires allegations of fact demonstrating that Farmers acted unreasonably and that Farmers knew its conduct or

---

[5]There are no allegations in the Amended Class Action Complaint that identify or explain what prompted Mr. Summers to secure MedPay coverage for each of his vehicles or to what extent a Farmers' agent influenced that decision.

position was unreasonable or recklessly disregarded the fact that its conduct or position was unreasonable. *Cf. Travelers Insurance Co. v. Savio*, 706 P.2d 1258,1275 (Colo. 1985) (holding that the tort of bad faith conduct by an insurer in a first-party context requires proof that "the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable"); *Jordon v. City of Aurora*, 876 P.2d 38, 43 (Colo. App. 1993) (noting that in a first party context, a claim for bad faith breach of an insurance contract includes two elements: (1) unreasonable conduct and (2) knowledge that the conduct is unreasonable or a reckless disregard for the fact that the conduct is unreasonable). *See also* CJI-Civ. 25:2 (2012). Again, it cannot be disputed that Mr. Summers received all of the MedPay benefits promised by Farmers under the literal language of his insurance policies. There are no factual allegations that Farmers misstated or misrepresented the terms and conditions of the policies Mr. Summers purchased, or failed to pay benefits contemplated under the policies in question. *Cf. Mullen*, 232 P.3d at 174.

Since Mr. Summers cannot sustain his First, Second or Third Claims based on misrepresentations within the MedPay policies themselves, he argues that "there was a component of premium charged on three policies to provide coverage for named insurers (sic) and resident relatives, and if you accept the personal nature of the coverage under the *DeHerrera* analysis, it only had to be purchased once to provide the coverage." *See* Transcript of May 31, 2012 hearing, at 30. Stated differently, Plaintiff contends that "since Medpay for the named insured and resident relatives is not limited to occupancy in any particular vehicle, Farmers was aware at the time of sale of policies to its Colorado insureds like Summers that it was misleading its insureds as to the benefit of purchasing Medpay coverage on any subsequent vehicles once the first vehicle as Medpay coverage." *See* Scheduling Order (doc.#39) at 3. In short, the viability

of the First, Second, Third and Fourth Claims hinges upon Plaintiff's construction of the MedPay

statute itself and arguments extrapolated from the Colorado Supreme Court's decision in

*DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001).

>       Title 10 of the Colorado Revised Statutes provides, in pertinent part, that

>       (1) (a)  Except as otherwise provided in this subsection (1), no automobile liability
>       or motor vehicle liability policy insuring against loss resulting from liability
>       imposed by law for bodily injury or death suffered by any person arising out of the
>       ownership, maintenance, or use of *a motor vehicle* shall be delivered or issued for
>       delivery in this state unless coverage is provided in the policy or in a supplemental
>       policy for medical payments with benefits of five thousand dollars for bodily
>       injury, sickness, or disease resulting from the ownership, maintenance, or use of
>       *the motor vehicle.*

>       (b)  A policy may be issued without medical payments coverage only if the
>       named insured rejects medical payments coverage in writing or in the same
>       medium in which the application for the policy was taken . . . .

>       (e)  Nothing in ths section shall be construed to limit any other coverage amounts
>       being made available by an insurer.

*See* C.R.S. §10-4-635(1) (emphasis supplied).  The "MedPay" coverage described in the

foregoing provision "shall be paid to persons providing medically necessary and accident-related

trauma care or medical care," including "licensed ambulances or air ambulances that provide

trauma care at the scene or immediately after the motor vehicle accident" and "trauma physicians

that provide trauma care to stabilize or provide the first episode of care to the injured person."

C.R.S. §10-4-635(2).[6]  Neither side has directed this court's attention to any judicial decisions

specifically construing the Colorado MedPay statute and thus, I am writing largely on a blank

---

[6]The legislative history suggests that the MedPay statute was enacted in an effort to "keep
our trauma system whole" by providing a mechanism for emergency personnel to obtain prompt
reimbursement of costs.  *See* Exhibit H, at pages 6 and 7 of 65, attached to Farmers' Reply in
Support of Its Motion to Dismiss.

slate.

This court's responsibility in interpreting the MedPay statute "is to give effect to the General Assembly's purpose and intent in enacting the statute. In so doing, [I should] look first to the statute's language, and where the language is clear and unambiguous, [my] analysis is complete and there is no need to resort to other rules of statutory construction."[7] *People ex rel. M.C.*, __ P.3d __, 2012 WL 1231952, at *3 (Colo. App. 2012) (internal citations omitted). *See also Wells Fargo Bank v. Kopfman*, 226 P.3d 1068, 1072 (Colo. 2010) ("A reviewing court begins the analysis with the plain language of the statute. If the statute is clear and unambiguous on its face, then the court need look no further."). In construing statutory language, courts should "begin by looking at the express language of the statute, construing words and phrases according to grammar and common usage." *Jefferson County Board of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010).

Plaintiff's statutory construction of C.R.S. § 10-4-635(1)(a) starts with the following definitions set forth in C.R.S. § 10-4-601(4) and (5):[8]

> (4) "Described motor vehicle" means the motor vehicle described in the complying policy.

> (5) "Insured" means the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using the described motor vehicle with the permission of the named insured."

---

[7] The sequence of arguments in Mr. Summers' responsive brief turns this rule of statutory construction on its head. Plaintiff discusses at length the Colorado Supreme Court's decision in *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001) before conceding that "the language of §10-4-635(1)(a) must be considered." *See* Plaintiff's Response to Farmers' Motion to Dismiss, at 13-16.

[8] The drafters made clear that the listed terms and phrases "as used in this part" shall have the stated meaning "unless the context otherwise requires." *See* C.R.S. §10-4-601.

Plaintiff then argues that the term "described motor vehicle" can only mean "the motor vehicle described in the policy," while the "general term 'insured' . . . [means] that named insureds and resident relatives are insureds – without reference to use or occupancy in a 'described motor vehicle' – but that permissive users are only insureds if they are using the 'described motor vehicle.'" *See* Plaintiff's Response to Farmers' Motion to Dismiss, at 16-17.  Neither of these defined terms, however, actually appears in the MedPay statute.  Notwithstanding that salient point, Plaintiff presumes that if the General Assembly truly intended MedPay coverage to be "vehicle specific" (as Farmers argues) rather than "personal"(as Mr. Summers contends), the drafters would have used the defined term "described motor vehicle."  My research has not revealed, and Plaintiff has not directed me to, any reported decisions that stand for the proposition that, having defined a particular term or phrase, legislative drafters are precluded from using alternative language to express the same intent or achieve the same result.

Plaintiff's interpretation of C.R.S. §10-4-635(1) also places particular emphasis on the passage that refers to "bodily injury or death suffered by any person arising out of the ownership, maintenance, or use *of a motor vehicle.*"  Mr. Summers reasons that the phrase "a motor vehicle" reflected the Colorado Legislature's intent to make MedPay coverage non-vehicle specific, and that the subsequent reference to "*the motor vehicle*" in the last sentence of §10-4-635(1) "should be construed as modifying the earlier phrase . . . 'bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle.'" *See* Plaintiff's Response to Farmers' Motion to Dismiss., at 19-20.  However, it strains logic to suggest that the drafters of the MedPay statute would have included a limiting phrase, *i.e.,* "the motor vehicle," to "modify" a more general reference to "a motor vehicle," if their intent was to provide expansive, non-

14

vehicle specific coverage.[9]  It seems plain from the face of the statute that the phrase "the motor

vehicle" was intended to link coverage to a specific vehicle.  *Cf. Carlson v. Ferris*, 85 P.3d 504,

509 (Colo. 2003) (holding that courts should not "presume that the legislature used language

'idly and with no intent that meaning should be given to its language'").  I conclude that

Defendant's, rather than Plaintiff's, interpretation of the MedPay statute is consistent with well-

accepted rules of statutory construction.

Having reached that conclusion, I also find that Plaintiff's other self-described "principal

analytical touchstone," the *DeHerrera* decision, is readily distinguishable and not controlling in

this case.[10]  The Colorado Supreme Court acknowledged in *DeHerrera,* 30 P.3d at 174, that

"UM/UIM coverage replaces the benefits an innocent injured insured would have recovered from

an uninsured or underinsured tortfeasor, if the tortfeasor had been insured for liability coverage

to the same extent that the injured insured was covered for UM/UIM benefits."  This coverage

furthers the underlying public policy "to assure the widespread availability to the public of

insurance protection against financial loss caused by negligent financially irresponsible

---

[9]*Webster's Encyclopedic Unabridged Dictionary* (2001) describes "the" as a definite
article, when "used, esp. before a noun, with a specifying or particularizing effect, as opposed to
the indefinite or generalizing force of the indefinite article a or an."  In contrast, *Webster's
Encyclopedic Unabridged Dictionary* refers to "a" as an indefinite article signifying "not any
particular or certain one of a class or group."

[10]Plaintiff's counsel conceded during oral argument on May 31st, that "*DeHerrera* is the
touchstone" of his client's argument.  However, counsel also recognized that *DeHerrera* does not
apply unless the court concludes that the MedPay statute establishes "personal," rather than
vehicle-specific coverage.  As counsel explained during the hearing, "[y]ou can't put *DeHerrera*
at the front of the parade and decide it rises or falls on that, you have to look at the statutory – the
entire statutory scheme under which med-pay is found and then determine if the rationale used by
the Supreme Court and *DeHerrera* applies because med-pay is a personal coverage."  *See*
Transcript of May 31, 2012 Hearing, at 31.

motorists." *Id.*  In construing the UM/UIM statute, the Colorado Supreme Court placed "great weight" on this legislative objective and was guided by the particular "nature of UM/UIM insurance coverage." *Id.*  As noted above, the MedPay statute has a decidedly different and much narrower policy objective.

Consistent with the underlying purpose of the UM/UIM statute, the *DeHerrera* decision also cited the specific language in §10-4-609(1) for the proposition that "UM/UIM coverage . . . must protect 'persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." *Id* at 175.

> This phrase, "persons insured thereunder" means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing.  Thus, the statute provides coverage for *persons*; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of *vehicle*.

*Id.*  The Supreme Court ended its analysis in *DeHerrera* by again emphasizing that its interpretation of the above-quoted statutory language was "consistent with the effect of UM/UIM coverage limits to act as a replacement for the liability policy limits of an uninsured or underinsured motorist who is at fault in a motor vehicle accident." *Id.*  I find nothing in the Colorado Supreme Court's analysis in *DeHerrera* that would support a similar construction or interpretation of the MedPay statute.  In short, Plaintiff's reliance on *DeHerrera* and its interpretation of Colorado's UM/UIM statute is misplaced.  *See Apodaca v. Allstate Insurance Co.*, 255 P.3d 1099, 1107 (Colo. 2011) ("While we recognize the important policy considerations behind the UM/UIM statute, there is a limit to what was 'contemplated by Colorado's [UM/UIM] legislation.'").

Paragraph 28 of the Amended Class Action Complaint avers that "[w]hen a vehicle is

insured under an automobile policy in Colorado, the Medpay coverage applies to a named

insured or family member . . . who is injured as a result of the use or operation of *any automobile*

[emphasis added], irrespective of the vehicle the injured person occupies at the time of the injury,

or even if a named insured or family member is a pedestrian when hurt." That allegation is

contrary to Colorado law and the terms of Mr. Summer's policies. The Colorado MedPay statute

provides that if an insurer offers a motor vehicle liability insurance policy insuring against loss

resulting from liability imposed by law for bodily injury or death arising out of the ownership,

maintenance, or use of a motor vehicle, then coverage must be provided "for medical payments .

. . for bodily injury, sickness or disease resulting from the ownership, maintenance or use of the

motor vehicle." The latter phrase can only be construed to mean "the motor vehicle" that is the

subject of the policy under which benefits are paid. To the extent that Plaintiff's first three

claims for relief, as well as the Fourth Claim for Declaratory Relief, rely on a contrary statutory

construction, I conclude they fail to state cognizable claims for relief.

B.      *Plaintiff's Remaining Stacking Claim*

Mr. Summers' remaining stacking claim, the Fifth Claim, alleges that the anti-stacking

endorsements in his policies violate the doctrine of reasonable expectations to the extent he is

prevented from recovering under each of his MedPay policies. Mr. Summers argues that "to the

extent he was required by Farmers to pay additional premiums and purchase additional MedPay

coverage, he should be able to stack the MedPay coverage limits of the multiple policies." *See*

Plaintiff's Response to Farmers' Motion to Dismiss, at 23.

Advancing what counsel characterized as a "novel approach" during the May 31st hearing,

Plaintiff acknowledges that prior to the early 1990s Colorado courts generally upheld anti-

stacking clauses as not violative of public policies.  *Id.* at 24.  *See, e.g., Arguello v. State Farm Mutual Automobile Insurance Co.*, 599 P.2d 266, 268 (Colo. App. 1979), *limited disapproval*, 30 P.3d at 176 n.8.  In 1992, the Colorado General Assembly enacted provisions allowing insurers to prohibit stacking the limits of separate UM/UIM policies.[11]  *Apodaca*, 255 P.3d at 1106.  From that fact, Plaintiff's counsel reasons that when

> the General Assembly intervened in 1992 in the UM/UIM setting to define what can be stacked and what cannot be stacked, . . . the legislature – not necessarily usurped the field, but certainly demonstrated that when it was writing a statute which governed automobile insurance coverage that it was capable of addressing stacking or anti-stacking and that [the] absence of any provision concerning stacking or anti-stacking in the med-pay statute is significant given the fact that the General Assembly inserted itself into the common law process and made it a statutory one.

*See* Transcript of May 31, 2012 Hearing, at 53.  Mr. Summers reasons from the lack of express anti-stacking language in the MedPay statute that the General Assembly must have "intended through its statutory scheme to not preclude the stacking of MedPay coverages."  *See* Plaintiff's Response to Farmers' Motion to Dismiss, at 26.

        While I acknowledge the creativity of Plaintiff's argument, I find it wholly unpersuasive. To date, it appears that the General Assembly has addressed the issue of stacking in the narrow context of UM/UIM coverage.  By statute, "stacking" has been defined as "aggregating, combining, multiplying, or pyramiding limits of separate policies *providing uninsured and underinsured motorist coverage as provided in section 10-4-609*."  C.R.S. § 10-4-402(3.5 (emphasis added).  I find nothing in that definition that would suggest the General Assembly intended to depart from Colorado's "strong commitment to the freedom of contract" in drafting

---

[11]Those anti-stacking provisions were removed from the UM/UIM statute in 2007.  *See Snell v. Progressive Preferred Insurance Co.*, 260 P.3d 37, 38 (Colo. App. 2010).

the MedPay statute.  *Cf. Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039, 1047 (Colo. 2011).  "Even within the context of statutorily mandated insurance, insurers are free to include 'conditions and exclusions that are not inconsistent with' Colorado's mandatory insurance laws." *Id.*   Moreover, "[c]ourts may neither add provisions [to an insurance policy] to extend coverage beyond that contracted for, nor delete them to limit coverage."  *Mid-Century Insurance Co. v. Robles*, 271 P.3d 592, 594 (Colo. App. 2011).  Federal courts should be equally reluctant to delete policy provisions in order to expand coverage in the absence of clearly articulated state law precedent or legislative pronouncements.  I am reluctant to divine the General Assembly's intent with respect to stacking and the MedPay statute from silence alone.

To the extent that Plaintiff's Fifth Claim relies upon the doctrine of reasonable expectations, I find that argument both factually and legally unsupported.  In *Bailey,* the Colorado Supreme Court observed that the doctrine of reasonable expectations has been successfully asserted (1) "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue;" and (2) "where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise."  *Id.* at 1050.  I do not find any facts alleged in the Amended Class Action Complaint that would support Plaintiff's argument in support of the Fifth Claim.

To the contrary, I find that any ordinary, objectively reasonable insured reading the MedPay policies at issue in this case would understand that stacking MedPay coverage limits was

not contemplated or permitted.[12]  *Shelter Mutual Insurance Co. v. Breit*, 908 P.2d 1149, 1152

(Colo. App. 1995) (holding that "any expectation that [the subject] policy would allow stacking .

. . simply would not be reasonable" where the policy language was not conflicting, ambiguous or

contrary to legislative intent).  Mr. Summers essentially argues that having paid premiums for

three MedPay policies, notions of basic fairness should entitle him to the aggregate benefits

under those policies.  As facially appealing as that argument seems, "the doctrine of reasonable

expectations 'does not contemplate the expansion of coverage on a general equitable basis.'"

*Bailey v. Lincoln General Insurance Co.*, 255 P.3d at 1054 (quoting *Johnson v. Farm Bureau*

*Mutual Insurance Co.*, 533 N.W.2d 203, 206 (Iowa 1995)).  *See also Roberts v. American Family*

*Mutual Insurance Co.*, 113 P.3d 164, 167 (Colo. App. 2004) (rejecting plaintiff's anti-stacking

argument as contrary to the doctrine of reasonable expectations; "plaintiff could . . . not

reasonably have expected that defendants would pay more than the policy maximum merely

because two policies could potentially have applied to the same accident"), *judgment reversed on*

*other grounds*, 144 P.3d 546 (Colo. 2006).  In short, I find no factual allegations in the Amended

Class Action Complaint and no arguments presented in support of the Fifth Claim that would

persuasively suggest that the anti-stacking provision in Plaintiff's MedPay policies violates

public policy.

---

[12]In Part III of Plaintiff's policies, the section dealing with "Other Insurance" states that "[i]f any applicable insurance other than this policy is issue to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."  *See* Exhibit A (doc. #21-1), at page 13 of 15, attached to the Amended Class Action Complaint.

## CONCLUSION

For the foregoing reasons, this court recommends that Defendant Farmers Insurance Exchange's Motion to Dismiss and Memorandum in Support (doc. #34) be GRANTED and that the Amended Class Action Complaint be dismissed with prejudice.

### Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant

had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d

1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to

appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 27th day of June, 2012.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge